UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK MONTELEONE and SHERI
MONTELEONE, individual and on
behalf of all others similarly situated,

                Plaintiffs,        Civil Action No. 13-cv-12716
                                             Honorable George Caram Steeh
   v.                                  Magistrate David R. Grand

THE AUTO CLUB GROUP, a
Michigan corporation, and
MEMBERSELECT INSURANCE
COMPANY, a Michigan corporation,
jointly and severally
                Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS CLAIMED
TO BE PRIVILEGED [24] AND GRANTING PLAINTIFFS' MOTION
TO COMPEL DOCUMENTS WITHHELD PURSUANT TO MICHIGAN'S
STATUTORY SELF-EVALUATIVE PRIVILEGE [27]**

     Before the Court are Plaintiffs' two motions to compel. [24, 27]. The first seeks production of documents withheld by Defendants on the basis of attorney-client privilege. [24]. The second seeks the production of documents withheld by Defendants on the basis of Michigan's statutory "self-evaluative privilege," a privilege unique to insurance companies in Michigan. [27]. A hearing was held on February 10, 2014, where both parties presented argument. At the close of the hearing, the Court ordered Defendants to produce the documents in dispute for review *in camera*. Defendants have done so, and the Court has since conducted that review. A subsequent telephone conference was held between the Court and the parties on February 28, 2014, and Defendants provided one additional document to the Court for *in camera* review. Therefore, the matter is now ripe for disposition. For the following reasons, the Court

grants in part and denies in part Plaintiffs' motion to compel privileged documents [24] and grants their motion to compel documents withheld pursuant to Michigan's self-evaluative privilege. [27].

**A.     Background**

Plaintiffs filed suit on their own behalf, and sought class status for other persons, alleging that Defendant insurance companies breached their insurance contracts with Plaintiffs by changing their coverage procedures with respect to certain water damage claims. Plaintiffs contend that this change resulted in Defendants no longer covering certain water damage previously covered by their policies, without actually altering the policy language in effect. Central to this claim is a March 4, 2009 email from Nicole Whitlow, Defendants' Director of Homeowner Claims, in which she discusses the way the policies should cover or not cover various types of water damage. (Cplt. ¶ 33). In the instant motions, Plaintiffs seek a Court order compelling the production of seventeen documents they allege are relevant to their claims that a change in policy enforcement occurred, and that the change was solely intended to save the Defendants money on claims. Defendants do not argue the relevancy of the challenged documents, but have withheld sixteen of them[1] on grounds of privilege, and have produced a privilege log to that effect.[2]

The documents fall generally into four categories: (1) emails to and/or from an attorney for the Property Loss Research Bureau (the "PLRB"), a trade organization of which Defendants

---

[1] The seventeenth document Plaintiffs seek was not included on Defendants' privilege log. That document is bates labeled "DEFS001675" and is characterized as the unredacted version of a May 20, 2009 email from Whitlow. Plaintiffs have in their possession the redacted version.

[2] In addition, during the February 28, 2014 conference call (where the Court sought clarification regarding privilege log document #9), an eighteenth document was identified as being an attachment to #9. Plaintiffs requested production of that document and Defendants asserted the attorney-client privilege. That document will be dealt with in this Court's Order as well.

are members, (2) internal emails discussing PLRB attorneys' opinions, (3) internal emails discussing enforcement of policy provisions with attorney involvement, and (4) internal emails discussing enforcement of policy provisions with no attorney involvement. Defendants claim that the attorney/client privilege protects the documents referenced in categories 1-3, and that Michigan's "self-evaluative" privilege protects the documents referenced in category 4.[3]

With regards to categories 1-3, Plaintiffs argue that the attorney-client privilege does not apply to interactions with PLRB attorneys because no attorney-client relationship exists, and even if such a relationship did exist, Defendants were not seeking legal advice from the PLRB attorneys but instead were seeking business advice which is not privileged. With regards to documents in category 4, Plaintiffs argue that the self-evaluative privilege does not apply because the privilege is not available in this case and even if it was, the purpose behind Defendants' audit of their policies' language had nothing to do with ensuring compliance with laws or regulation, a predicate for relying on the privilege. Finally, Plaintiffs argue that even if the various privileges apply, all of these materials should be disclosed to the extent Defendants have waived their privilege assertions due to either partial disclosure or to the extent Defendants are relying on an advice of counsel defense, and thus using the privilege as both a sword and a shield. For purposes of organization, the Court finds it beneficial to address the self-evaluative privilege materials first and the attorney-client privilege materials second. The Court will then address Plaintiffs' claims of waiver.

**B.      Plaintiff's Motion to Compel Self-Evaluative Privilege Materials**

Plaintiffs challenge Defendants' assertion of Michigan's "self-evaluative" privilege to a

---

[3] Defendants do not make any arguments or assertions of privilege over DEFS001675 and, as noted above, it is not included on their privilege log. Nor did they provide the document to the Court for *in camera* review.

number of internal corporate emails, arguing that it does not apply in this federal case and that, even if it did, the documents at issue do not fall within its scope.

Plaintiffs first argue that Michigan's "self-evaluative" privilege does not apply here because this case, brought under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d) – a federal statute that broadens the federal court's diversity jurisdiction in certain class action cases – necessitates the application of federal privilege law. The Court disagrees.

Federal Rule of Evidence 501 states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rules of decision." Thus, in cases brought in this Court on diversity grounds, state law will generally govern privilege issues. In cases where there is exclusively a federal question, federal privilege law governs. The question here is whether invoking this Court's jurisdiction under CAFA transforms this Court's jurisdiction from that of diversity into that of federal question.

Before CAFA was enacted, all class action suits brought in federal court had to satisfy stringent standards of complete diversity of all named plaintiffs from all defendants, as well as a large individual-amount-in-controversy requirement. *See Zahn v. Int'l Paper co.*, 414 U.S. 291, 301 (2003) (all plaintiffs in class action must separately meet § 1332's amount in controversy requirement); *Devlin v. Scardelletti*, 536 U.S. 1 (2002) (named plaintiffs must be completely diverse from all defendants in class action suit). CAFA was enacted in 2005 "to eliminate the complete-diversity requirements of minimal diversity and individual-amount-in-controversy requirements that applied to all other diversity suits in favor of the more forgiving requirements of minimal diversity and a $5 million total amount in controversy." *Scimone v. Carnival Corp.*, 720 F.3d 768, 885 (11th Cir. 2013) (*citing* S. rep. No. 109-14 at 10 (2005)). However, CAFA remains a subsection of the diversity jurisdiction statute, 28 U.S.C. § 1332. Thus, Plaintiffs'

invocation of CAFA as a vehicle for this case does not create a "federal question" simply because CAFA is part of a federal statute, no more than invoking this Court's jurisdiction under any of the other provisions of § 1332 would create a federal question. Indeed, the Courts that do apply federal rules to CAFA cases do so either where the issue in question is whether the plaintiffs have met the jurisdictional requirement, an issue squarely implicating CAFA itself,[4] or where the plaintiffs have an underlying federal question claim in addition to their various state law diversity claims and the issue of privilege surrounds the federal question claim.[5] Because this case, which only alleges state law claims, is still properly before this Court pursuant to diversity jurisdiction, state law supplies the rules of decision and thus supplies the rules of privilege to be applied here. *See Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 244 F.R.D. 352 (E.D. La. 2007) (Holding state law supplied rules or privilege in case brought under Court's diversity jurisdiction and CAFA, noting, "While CAFA is a federal statute, it does not alter the nature of plaintiff's state law claims.").[6] Therefore, Michigan's self-evaluative privilege

---

[4] *See Molina v. LexMark Int'l Inc.*, No. 08-04796, 2008 U.S. Dist. LEXIS 83014, *20-21 (C.D. Cal. Sept. 30, 2008) (holding that federal privilege law applied to issue of amount in controversy even where state law supplied rules of decision of underlying claim because, "It is clear that federal law governs whether a case exceeds the amount in controversy necessary for removal under CAFA.") (*citing Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352 (1961)).

[5] *See Rowe v. Bankers Life & Cas. Co.*, No. 09-491, 2011 U.S. Dist. LEXIS 53184, *9-10 (N.D. Ill. May 18, 2011) (noting, in dicta, that courts do not necessarily apply state privilege law when jurisdiction arises under both federal question jurisdiction and the diversity statute) (citing cases).

[6] Plaintiffs alternatively claim that because the issue to be decided here is governed by the Federal Rules of Civil Procedure, namely Rule 26, the issue should be subject to federal privilege rules. Plaintiffs offer no support for this claim and the Court finds no support in case law. Rule 501 requires the application of state rules of decision where a state law *claim or defense* is in issue. Indeed, the result Plaintiffs suggest would gut Rule 501, as every discovery dispute in federal court is technically governed by the Federal Rules of Civil Procedure.

is at least potentially applicable to this case.[7]

Michigan's self-evaluative privilege provides that "an insurance compliance self-evaluative audit document is privileged information and is not discoverable or admissible as evidence in any civil, criminal, or administrative proceeding." Mich. Comp. Laws § 500.221 (2013). The statute defines an "insurance compliance audit" as:

> a voluntary, internal evaluation, review, assessment, audit, or investigation for the purpose of identifying or preventing noncompliance with or promoting compliance with laws, regulations, orders, or industry or professional standards, conducted by or on behalf of an insurer licensed or regulated under this act or which involves an activity regulated under this act.

M.C.L. § 500.221(15)(a). An "insurance compliance self-evaluative audit document" is defined by the statute as:

> a document prepared as a result of or in connection with an insurance compliance audit. An insurance compliance self-evaluative audit document may include a written response to the findings of an insurance compliance audit. An insurance compliance self-evaluative audit document may include, but is not limited to, field notes and records of observations, findings, opinions, suggestions, conclusions, drafts, memoranda, drawings, photographs, exhibits, computer-generated or electronically recorded information, phone records, maps, charts, graphs, and surveys, if this supporting information is collected or prepared in the course of an insurance compliance audit or attached as an exhibit to the audit. An insurance compliance self-evaluative audit document also

---

[7] At the hearing, Plaintiffs argued that because the various class action plaintiffs hail from several different states, all of which have different rules of privilege, the better course would be to apply rules of federal privilege for purposes of consistency. As efficient and consistent as such a route might be, it is not supported by any controlling case law, and not the proper course under Rule 501. The proper course would be to conduct a choice of law analysis to determine which state's privilege law applies. *See C.B. Fleet Co. v. Colony Specialty Ins. Co.*, No. 11-375, 2012 U.S. Dist. LEXIS 180950, *5-6 (N.D. Ohio Dec. 21, 2012) (holding that question of which state law applies to question of privilege in class action must be analyzed through a choice of law analysis, which is governed by the choice of law rules of the state in which the Court sits) *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 4878 (1941)). However, Plaintiffs never engage in that analysis nor ask the Court to do so. Moreover, no class has been certified in this case and a motion to deny class certification is currently pending before the Court. [35]. Therefore, the Court finds it appropriate to apply Michigan's privilege law for purposes of the instant motion.

includes, but is not limited to, any of the following:

> (i) An insurance compliance audit report prepared by an auditor, who may be an employee of the insurer or an independent contractor, which may include the scope of the audit, the information gained in the audit, and conclusions and recommendations, with exhibits and appendices.
>
> (ii) Memoranda and documents analyzing portions or all of the insurance compliance audit report and discussing potential implementation issues.
>
> (iii) An implementation plan that addresses correcting past noncompliance, improving current compliance, and preventing future noncompliance.
>
> (iv) Analytic data generated in the course of conducting the insurance compliance audit.

MCL § 500.21(15)(b). The privilege does not apply to:

> (a) Documents, communications, data, reports, or other information expressly required to be collected, developed, maintained, or reported to a regulatory agency under this act or other federal or state law.
>
> (b) Information obtained by observation or monitoring by any regulatory agency.
>
> (c) Information obtained from a source independent of the insurance compliance audit.
>
> (d) Documents, communication, data, reports, memoranda, drawings, photographs, exhibits, computer records, maps, charts, graphs, and surveys kept or prepared in the ordinary course of business.

M.C.L. § 500.21(13). Furthermore, the privilege may be abrogated by court order where the court finds, after an *in camera* review of the documents, that "(i) The privilege is asserted for a fraudulent purpose;" or "(ii) The material is not subject to the privilege as provided under subsection (13)." M.C.L. § 500.221(7).

Despite it having been more than 10 years since the enactment of this privilege, little case law has been developed on what documents do or do not fall within its scope. However, upon an *in camera* review of the documents in question here, the Court finds that the self-evaluative

privilege does not apply to shield these documents from discovery. First, the privilege log's own characterization of a number of the documents is instructive here, as it describes them as reflecting conversations about "auditing the policy language to ensure *internal* compliance and consistency." (*See* Def. Priv. Log. #1-2, 10-11, 15) (emphasis added). Moreover the content of these documents does not reflect the type of "audit" contemplated by the explicit language of the privilege. At the hearing, Defendants were specifically questioned as to what "law" they were trying to assure compliance with during the policy language audit, as is required for their efforts to constitute an "insurance compliance audit." M.C.L. § 500.221(15)(a) (defining such an audit as one undertaken "for the purpose of … promoting compliance with laws, regulations, orders or industry or professional standards…"). After much back and forth, and being unable to identify any particular law, regulation, order, etc., Defendants ultimately claimed that they were attempting to assure compliance with the general "common law." But even then, they failed to cite a specific common law doctrine with which they were attempting to comply.

Defendants' failure to cite any specific legal provision, regulation, or professional standard for which their audit was designed to assure compliance belies their ability to rely on the self-evaluative privilege to protect these documents from disclosure. For these reasons, the Court finds that Defendants have not met their burden to show the self-evaluative privilege applies here, and thus Documents # 1, 2, 10, 11 and 15 on Defendants' privilege log are discoverable.

C.  **Plaintiff's Motion to Compel Privileged Materials**

   1.  **PLRB Emails**

Plaintiffs challenge Defendants' claim of attorney-client privilege to emails between Defendants' employees and attorneys with the PLRB, arguing that there is no attorney-client

8

relationship between Defendants and the PLRB, and even if one did exist, these emails are not ones where legal advice is being sought or given.

The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents. *Grubbs v K Mart Corp.*, 161 Mich. App. 584, 589; 411 N.W.2d 477 (1987).[8] The scope of the attorney-client privilege is narrow, attaching only to confidential communications between the client and his advisor that are made for the purpose of obtaining or rendering legal advice. *Yates v Keane*, 184 Mich. App. 80, 83; 457 N.W.2d 693 (1990). Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication. *Hubka v Pennfield Townfield*, 197 Mich. App. 117, 121; 494 N.W.2d 800 (1992), *rev'd on other grounds* 443 Mich. 864 (1993).

Here, Defendants assert that the attorney-client privilege protects communications between their employees and attorneys for the PLRB. Defendants cite no case that supports their position, however. Plaintiffs argue that no attorney-client relationship was created with the PLRB because giving legal advice is not one of the functions of the PLRB and, regardless, there is no evidence that what Defendants were seeking was legal advice, rather than simply "business advice." In support of their argument, Plaintiffs cite to the case of *Sr. Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*, No. 02-8133, 2003 U.S. Dist. LEXIS 1027 (N.D. Ill. Jan. 21, 2003), specifically pointing to the Court's holding that "there is no basis for a claim that the requested materials," which were communications between insurance company employees and PLRB

---

[8] Just as with the analysis of the self-evaluative privilege, since state law supplies the rules of decision in this case, Michigan's attorney-client privilege applies here as opposed to the federal common law privilege.

attorneys, "are privileged or constitute trade secrets." *Id.* at *11. However, the problem with Plaintiffs' reliance on this holding is that the court in *Sr. Int'l.* was not actually faced with a claim of privilege, let alone attorney-client privilege. In *Sr. Int'l.*, the court was only faced with claims that the communications sought contained confidential business information and trade secrets. *Id.* at *6. Therefore, while the holding purports to apply to an issue of privilege, the analysis does not support such a conclusion. At any rate, the Northern District of Illinois case is not binding on this Court.

Although cited by neither party, the Court has found several instructive cases which conclude that whether communications between trade group attorneys and trade group members are protected by the attorney-client privilege is, like most other privilege issues, a fact-specific question that must be decided on a case-by-case basis, often with the help of *in camera* inspection of the documents in question. *See e.g. A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 07-929, 2013 U.S. Dist. LEXIS 162331 (D. Conn. Nov. 14, 2013) (declining to issue a blanket rule regarding the privileged nature of communications between a trade group attorney and an insurance company and instead requiring *in camera* inspection of communications to determine whether they constituted legal advice); *County of San Mateo v. CSL Ltd.*, No. 11-1468, 2013 U.S. Dist. LEXIS 29624 (N.D. Ill. Mar. 4, 2013) (holding that whether communications between trade association attorney and members is privileged is decided on case by case basis) (collecting cases); *Salem Fin. Inc. v. United States*, 102 Fed. Cl. 793 (Fed. Cl. 2012) (holding that while unsolicited legal memorandum from trade association attorney to members is an example of legal advice not protected, "legal advice in response to a client's request would be privileged"). The Court agrees with these cases, finding that whether the attorney-client privilege applies to the communications between the PLRB attorneys and

Defendants is one that can only be resolved after an *in camera* inspection of the communications in question so that the Court can consider whether indicia exists to support application of the attorney-client privilege.

Having had an opportunity to engage in that process, the Court finds that Documents number 3, 4, 5, 6, 7, 8, 12, 13, 14 and 16 are covered by the attorney-client privilege, as they are documents reflecting confidential communications between Defendants and PLRB attorneys for the specific purpose of obtaining legal advice, and documents where employees of Defendants are relaying that privileged legal advice among themselves. *See Reckley v. City of Springfield*, No. 05-249, 2008 U.S. Dist. LEXIS 103663, *5 (S.D. Ohio Dec. 12, 2008) ("The fact that communication about legal advice is between or among employees of the client does not deprive it of its privileged status.") (citing cases).

However, the Court finds that Document #9 is only partially covered by the privilege. Specifically, the second and third paragraph of Nicole Whitlow's March 26, 2009 email is not privileged and must be disclosed. Those paragraphs do not discuss nor refer to any privileged communications, but instead refer directly to the Whitlow Directive, which has already been disclosed to Plaintiffs. The remainder of Document #9, including the aforementioned attachment (discussed on the February 28, 2014 conference call and subsequently provided to the Court for *in camera* review) is privileged and need not be disclosed.

   2.   **Redacted Portions of DEFS001675**

Plaintiffs next argue that Defendants should be required to produce the entirety DEFS001675. Plaintiffs claim that Defendants have waived any privilege they may have had with respect to the redacted portions of this document by not listing it on their privilege log. Contrary to Plaintiffs' argument, "the failure to file a proper privilege log does not automatically

result in a waiver of the privilege; rather, the Court may fashion an appropriate remedy which may, but need not, include a finding of waiver." *United States Fire Ins. Co. v. City of Warren*, No. 10-13128, 2012 U.S. Dist. LEXIS 58353, *17 (E.D. Mich. Apr. 26, 2012). However, here, the Court finds that waiver of the redacted portions of DEFS001675 is appropriate where Defendants failed in their briefing or at the hearing to even assert a privilege over this document, let alone meet their burden of demonstrating to the court that a privilege applied.[9] Accordingly, Defendants must produce an unredacted copy of DEFS001675.

**C.     Waiver/Advice of Counsel**

Finally, Plaintiffs argue that all of the attorney-client protected materials should be disclosed because Defendants have waived any privilege they otherwise had. Plaintiff asserts two types of waiver, which are interrelated. First, that disclosure of some of what Plaintiffs refer to as "the Whitlow Materials" necessitates disclosure of the remainder of those materials for purposes of completeness where Defendants allegedly are using the attorney-client privilege both as a shield and a sword. In the same vein, Plaintiffs argue that the above-cited materials require disclosure even in the face of a privilege due to "the likelihood" that Whitlow either relied upon or rejected the advice of counsel when formulating the Whitlow Directive. Defendants argue that they have not asserted any "advice of counsel" defense and thus the privilege is not waived. The Court agrees with Defendants.

While it is true that the attorney-client privilege "may implicitly be waived when

---

[9] Defendants did not provide this Court with an unredacted copy of this document to review *in camera*. Furthermore, from a review of the redacted copy Defendants could not likely allege that the redacted portion is irrelevant and thus need not have be contained in a privilege log. *See e.g. Ypsilanti Comm. Utilities Auth. v. Meadwestvaco Air Sys., LLC*, No. 07-15280, 2009 U.S. Dist. LEXIS 99707 (E.D. Mich. Oct. 27, 2009) (party's prior production of documents later clawed back inconsistent with later assertion that documents were simply not relevant and thus need not be included on privilege log); *Dow Corning Compound Semiconductor Solutions, LLC v. Cree, Inc.*, No. 11-14255, 2012 U.S. Dist. LEXIS 181949 (E.D. Mich. Dec. 27, 2012) (same).

defendant asserts a claim that in fairness requires examination of protected communications," that is not what is occurring here. *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005). The belief that Whitlow may or may not have consulted counsel and relied or rejected the advice of that counsel in formulating the Whitlow Directive is irrelevant where Defendants are not asserting an advice of counsel defense and not attempting to use the privileged parts of those communications to further their defense. *See New Phoenix Sunrise Corp. v. Comm'r of IRS*, 480 Fed. Appx. 908 (6th Cir. 2010) ("Litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case.") (*quoting In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005)). Therefore, the Court finds that Defendants have not caused a subject-matter waiver of the attorney-client privilege over these otherwise privileged materials.

**D. Conclusion**

For the foregoing reasons, Plaintiffs' Motion to Compel Production of Documents Withheld by Defendants Pursuant to Michigan's Statutory Self-Evaluative Privilege **[27]** is **GRANTED**, and their Motion to Compel Production of Documents Claimed to Be Privileged **[24]** is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that, within 14 days of the date of this Order, Defendants shall produce **Document #1, 2, 10, 11, and 15**, as well as **DEFS001675** in their entirety, and the **portions of Document #9** referenced, provided that Defendants' filing of a timely objection shall stay their production obligation as to any document that is the subject of such objection until such objection is resolved by Judge Steeh. The other disputed documents remain privileged and are not subject to disclosure.

**IT IS SO ORDERED.**

| | |
|---|---|
| Dated: March 11, 2014 | s/David R. Grand |
| Ann Arbor, Michigan | DAVID R. GRAND |
| | United States Magistrate Judge |

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Felicia M. Moses<br>
FELICIA M. MOSES<br>
Case Manager

Dated: March 11, 2014