UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK MONTELEONE
and SHERI MONTELEONE,

        Plaintiffs,

                                    CASE NO. 13-CV-12716

v.                                 HONORABLE GEORGE CARAM STEEH

THE AUTO CLUB GROUP
MEMBERSELECT INSURANCE
COMPANY,

        Defendants.
_____/

## OPINION AND ORDER

This insurance coverage dispute arises out of plaintiffs', husband and wife, Frank and Sheri Monteleone, claim under their homeowner's policy, for significant water damage in their basement which they allege amounts to a loss of more than $115,000. (Complaint, ¶ 48). Jurisdiction in this putative class action is based on the Class Action Fairness Act ("CAFA"), pursuant to 28 U.S.C. § 1332(d), because the amount in controversy allegedly exceeds $5 million and at least one member is a citizen of a different state than defendant. Defendants are The AutoClub Group ("AutoClub") and MemberSelect Insurance Company ("MemberSelect") (collectively "defendants"). The homeowner's policy was issued by MemberSelect. Defendants have filed a joint motion to deny class certification and to dismiss certain claims.[1] Oral argument was heard on April 9, 2014. For the reasons set

---

[1] In their motion, however, defendants state, "[d]efendant The Auto Club Group does not issue homeowners' insurance policies. The use of the term "'Defendants' is solely for the convenience of this brief and is not intended to suggest that The Auto Club

-1-

forth below, defendants' motion to deny class certification shall be granted, in part, as to the "property damage" subclass, and denied, in part, as to the "premium" subclass. Defendants' motion to dismiss certain claims shall be denied.

## BACKGROUND

On January, 17, 2013, plaintiffs suffered water damage in their finished basement of their Clinton Township home which caused significant harm, including loss of personal property, and structural damage to their home. (Complaint, ¶ 16). Plaintiffs claim the water damage has been traced to a faulty back flow preventer in the plumbing waste line that extends under the slab in plaintiffs' basement. Id. Plaintiffs filed a property loss claim in the amount of $121,819.34, plus reimbursement for the cost of the plumber. Id. at ¶ 17. Defendants treated the loss as an excluded loss under the policies' exclusions regarding "backups" and paid plaintiffs only $5,000 under the optional sump pump and sewer backup endorsement that plaintiffs had purchased.

Plaintiffs claim coverage for the loss existed under the policy's provision providing that insured perils include, "[a]ccidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance." (Doc. 49, Ex. A at 8, ¶ 13). Defendants denied coverage under the policies' exclusion paragraph 3(b) which provides no coverage exists for:

> water or water-borne material which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

---

Group is involved with the homeowners insurance policies at issue." (Doc. 35 at 20, n. 9).

Id. at 9, ¶ 3(b). Optional endorsements are available to surplant this exclusion which provide limits usually between $5,000 to $25,000. Named plaintiffs had purchased such an endorsement in this case, and under this option, defendants disclaimed liability and coverage above the $5,000 provided on the endorsement. (Complaint, ¶ 18). Plaintiffs claim that defendants wrongfully denied coverage under the policy and failed to investigate the cause of their loss. Id. at ¶ 59(m).

In addition to their individual claims for loss under the policy, plaintiffs seek to certify two categories of policyholders as class plaintiffs: (1) "property damage" plaintiffs, and (2) the "premium" plaintiffs.

**1.   The "Property Damage" Class**

Plaintiffs seek to certify as a subclass the following individuals:

> All persons who made water-related property damage claims under one or more of Defendants' Homeowners Insurance policies and received less than $10,000 in claim payments from Defendants at any time from approximately March 2009 to the present.

Id. at ¶ 53. For the reasons discussed in the court's analysis below, class certification shall be denied as to the "property damage" plaintiffs because issues of liability and damages as to each individual policyholder will predominate over any common questions.

**2.   The "Premium" Class**

The "premium plaintiffs" are described as *all* individuals who purchased homeowners' insurance from the defendants since March, 2009, regardless of whether these individuals filed any loss claims. Id. at ¶ 52. Plaintiffs claim the "premium" class of putative plaintiffs paid excessive premiums for coverage promised in their policies that defendants never intended to provide because defendants allegedly "conflat[ed] the

coverage available for overflows with the much more limited coverage available for backups." Id. at ¶ 59(c). Plaintiffs claim that beginning in March, 2009, defendants adopted a policy of denying all loss claims involving water entering a home through a basement pursuant to exclusion, paragraph 3(b), regardless of whether the water originated from inside or outside the insured premises. (Doc. 49 at 8-10). Although the Complaint is broadly drafted to suggest that plaintiffs seek to certify a class with respect to claims for all "overflow losses," in their response brief, plaintiffs claim that the policies provide for full coverage where the water: "(1) originates from within the premises, (2) due to a blockage or other plumbing failure, and (3) enters into the home through the basement or floor drain." Id. at 7. Plaintiffs claim defendants breached the homeowner's policies by denying coverage for "overflows," in the circumstances described above; these plaintiffs claim such "overflows" are covered losses, unlike claims for "backups," involving losses incurred when water originates from outside the insured home, which are not covered. In support of their assertion that defendants adopted an overriding policy of denying all claims for loss involving water entering the home through a basement, regardless of whether the water originated from within the home or not, defendants rely on an e-mail written by defendants' director of claims, Nicole Whitlow, which states:

> <u>Any claim reported with water back up or overflow coming from a basement drain is not a covered loss unless the insured has purchased the H-500 endorsement (increased limit are part of H-501).</u> Losses occurring after heavy storms or severe thawing of snow and ice are typically what causes many of the water in the basement losses. The water typically enters the home through either the municipal storm drain system or failure of sump pump to remove the excess water. These losses are excluded by 3.b. or 3.c. Water or sewage that enters the home through the sanitary drain is another form of back-up that is not covered by the policy unless it contains an endorsement, including back-ups caused by blockages.

(Doc. 49, Ex. E, emphasis in original). Plaintiffs claim that defendants' above policy interpretation reduced water related claim pay outs. Defendants dispute this, asserting that the average amount paid for water damage claims increased from 2009, when the policy was allegedly adopted, to 2010. Id. at Ex. F.

Concerning the "premium" subclass, plaintiffs argue damages will be determined based on the percentage of premiums paid which their expert will conclude covered the risk of "overflow" damages. (Doc. 49 at 35-36).[2] Specifically, plaintiffs allege: "class members paid for coverage that existed on paper, but in reality, was not worth the paper it was written on. A fair measure of their damages is the amount of their annual premium that was paid for the excluded water damage coverage. That amount can be derived by Plaintiffs' expert, and is exactly what Plaintiffs' premium class seeks in this case." Id. For the reasons set forth below, defendants' motion to deny class certification as to the "premium" plaintiffs shall be denied.

## ANALYSIS

Federal Rule of Civil Procedure 23 governs class certification. "While [a] district court has broad discretion in certifying class actions, it must exercise that discretion within the framework of Rule 23." Coleman v. GMAC, 296 F.3d 443, 446 (6th Cir. 2002). "The party seeking the class certification bears the burden of proof." In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996). "[B]oth the Supreme Court and this Circuit require that a district court conduct a 'rigorous analysis' of the Rule 23(a) requirements before certifying

---

[2]According to the Complaint, plaintiffs' yearly premium on their homeowner's policy is $1,425 per year. (Complaint, ¶ 12). Accordingly, the damages sought for the "premium" class members likely are well less than $1,000 per claimant.

a class." Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield, 654 F.3d 618, 629 (6th Cir. 2011). Rule 23(a) contains four prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, that must be met before a class can be certified. Fed. R. Civ. P. 23(a)(1)-(4). Once the party satisfies all of the conditions of Rule 23(a), he or she must also demonstrate that the class fits under one of the three subdivisions of Rule 23(b). Here, plaintiffs argue that class certification is appropriate under Rule 23(b)(3), which provides:

> (b) **Types of Class Actions**. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > **(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).[3] The United States Supreme Court recognized in General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on

---

[3] Plaintiffs' Complaint also alleges that class certification is appropriate under Federal Rule of Civil Procedure 26(b)(2), because declaratory and injunctive relief is sought with respect to the class as a whole. (Complaint, ¶ 68). Defendants did not move to deny certification pursuant to Rule 23(b)(2) and that matter is not before the court.

the certification question." Id.; see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

### 1. The "Property Damage" Class

Defendants do not dispute that the requirements of Rule 23(a) have been met, but focus their analysis on the prerequisites of Rule 23(b)(3). Defendants argue that (1) plaintiffs have failed to show that common questions of law or fact predominate over questions affecting only individual members, and (2) plaintiffs have failed to show that a class action is a superior method of adjudicating individual disputes. Plaintiffs respond that defendants' motion is premature as discovery is ongoing and the deadline for filing a motion for class certification, pursuant to the court's scheduling order, is set for August, 2014. The court finds, however, that the record is sufficiently developed that the court can decide the matter at this time. No additional discovery will alter the fact that adjudication of the "property damage" claims would require individual coverage determinations as to every member of the class. Such an unwieldy undertaking is clearly not appropriate in a class action.

Plaintiffs also argue that the subclass of "property damage" plaintiffs should be certified because each putative class member shares the factual question of whether defendants' misapplied the 3(b) exclusion. While admitting that the damages will vary for each putative class member, plaintiffs argue they flow from the same liability theory. Plaintiffs' reliance on Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013) is misplaced. In that case, the Supreme Court ruled that class certification was improper in an antitrust action where damages questions were not common to class members. Id. at

1435.  For the same reason certification was overruled in Behrend, certification is inappropriate here where the damages calculations and coverage questions for individual policyholders will undoubtedly vary greatly.

In order to satisfy the predominance requirement, "plaintiff[s] must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof."  Randleman v. Fidelity Title Ins. Co., 646 F.3d 347, 353 (6th Cir. 2011).  Plaintiffs have failed to meet their burden.  In this case, a class member may only recover by proving that she had a claim for water damage that was improperly denied which would require a fact-intensive inquiry.  The determination would require analysis of the type of water damage, the cause of the water damage, and whether coverage for the water damage was subject to an exclusion in the policy depending on the origination of the water.  Although in some cases the water's entry point may be evident from the claim file, in other cases, including the claim involving the named plaintiffs here, the source may be unclear or in dispute. The court would need to consider evidence as to whether the water or waste entered the home from a floor drain, as opposed to a toilet, shower or appliance.  Even if plaintiffs' interpretation of the policy is correct, each claim would likely require a separate investigation to determine if the water originated from inside or outside the home and this would require consideration of such individual factors as whether a blockage prevented water from leaving the residence, how weather conditions affected the water damage, the municipal system's historical issues, the amount of water in the basement and how quickly it accumulated, whether neighboring homes suffered similar

damage, and other related evidence. In sum, each property loss claim will require individual investigation to determine if coverage is owing.

Plaintiffs allege that discovery may lead to a class description that is not dependent upon a review of an insured's claim file. Such a hypothetical is both speculative and unlikely. The Complaint describes the subclass as "all persons who made water-related damage claims." (Complaint, ¶ 53). That such claims could be resolved without factual inquiry into the underlying claim is specious. Plaintiffs also argue that liability could be separated from damages. Such bifurcation would fail to make the case appropriate for class certification as both the issue of liability and the issue of damages are fact-specific inquiries depending on the particular circumstances of each individual case.

Finally, plaintiffs argue that their damages claims may be resolved through an appraisal process as envisioned in the policy and provided for by Michigan law; thus, the individual issue of damages does not defeat a finding that common issues predominate. At oral argument, plaintiffs' counsel submitted a slide stating that "[i]ndividual issues as to basis for denial; scope of coverage; and values will be resolved by appraiser." This argument is belied by the clear language of the policy which provides that "[i]f you and we fail to agree on the Actual Cash Value or amount of loss, either party may make written demand for an appraisal." (Doc. 49, Ex. A at 10). "Scope of coverage" is not a matter for appraisal, and the law is well settled that "the issue of an insurance policy's coverage is for the court to decide, not the appraisers." <u>Angott v. Chubb Group of Ins. Cos.</u>, 270 Mich. App. 465, 473 (2006). Only the amount of the loss is subject to appraisal.

Plaintiffs rely upon Jiminez v. Allstate Indemn. Co., No. 07-14494, 2009 WL 440958, at *3 (E.D. Mich. Feb. 23, 2009) (Murphy, J.), for the proposition that this court can interpret the paragraph 3.b exclusion and then leave the damages issue for the appraisal. This case is not so simple. To the extent Jiminez is persuasive authority, it is distinguishable here. In Jiminez, the court rejected defendant-insurer's argument that the case should be dismissed or stayed pending appraisal, but allowed class claims to proceed, reasoning that the court would first interpret the policy to determine the disputed phrase "actual cash value," which defendants argued should be based on market value, but plaintiffs argued should be calculated using cost of repair or replacement minus depreciation. Id. at *2. Unlike the narrow issue presented in Jiminez, where the only dispute was over the method of calculation of damages, here it is very much in dispute whether members of the proposed class have viable claims at all. The coverage issue before this court requires far greater judicial involvement than simply construing policy language but requires the court to consider the underlying facts surrounding each claim for water damage losses. The fact that an appraisal process exists for resolving the calculation of monetary damages once coverage is determined does not alter the individual issues of liability that are before the court.

Here plaintiffs allege that defendants have "improperly interpreted and misapplied its 3(b) exclusion to the water damage claims." (Doc. 49 at 34). While plaintiffs' theory of recovery involves interpretation of the policy, that does not end the inquiry. Each "property damage" class plaintiff would need to prove that coverage for that particular loss is provided by the policy. Even if this court were to determine that defendant-insurers had a policy of improperly denying all claims where water backed up

in a basement, regardless of the origination of the water, such a declaratory judgment by this court would not answer the question of whether particular plaintiffs were entitled to relief for their water damage losses. The court's interpretation of the policy language is only the first step in determining coverage. The court would then have to consider the facts of each individual's claims. A decision from this court that defendant-insurers adopted an improper method of determining water damage losses and failed to investigate meritorious claims, still would not require a finding of class-wide liability because in some individual cases, defendants still might prove the damage was caused by "water or water-borne material which back[ed] up through sewers or drains" (Doc. 35, Ex. 1 at ¶ 3(b)) or that some other exclusion applied. Contrary to plaintiffs' argument, once this court decides the legal issue of whether defendant-insurers allegedly adopted a uniform method of wrongfully denying legitimate water loss claims, the "property damage" class claims would not be ripe for an appraisal at that time. The court still would face the formidable task of considering whether coverage exists in each individual case.

There are no common issues which predominate. The individual questions of liability are fact-specific and will vary in each instance. Plaintiffs' argument that questions as to whether the statute of limitations applies, or whether defendants conducted a proper investigation of loss claims, are common questions, does not ring true. Each of these inquiries depends, in part, on the sufficiency of the particular claims of individual homeowners.

The "property damage" subclass also must be denied class certification under Rule 23(b)(3) because plaintiffs have failed to show that a class action is the superior

method of adjudicating the claims. In Pipefitters, 654 F.3d 618, the Sixth Circuit reversed class certification reasoning that a class action was not a superior method of adjudicating the dispute because each class member's right to recover for breach of contract depended on facts peculiar to their particular claim. Id. at 631. So too here. Class actions serve an important purpose in allowing plaintiffs to recover collectively on claims that are too small to justify individual prosecution. The Supreme Court recently explained, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amgen Inc. v. Connecticut Retirement Plans, 133 S. Ct. 1184, 1202 (2013) (citations omitted). The policies underlying class actions would not be served by certifying the class sought here. The named plaintiffs seek damages in excess of $115,000. (Complaint, ¶ 48). Given the amount at stake, plaintiffs have sufficient incentive to file individual claims. In sum, plaintiffs have failed to show that proceeding as a class action would be superior to allowing policyholders to pursue their claims individually. Given the fact-intensive issues of liability and damages which predominate, class certification as to the "property damage" plaintiffs must be denied.

**2.     The "Premium" Class**

The court turns now to the question of whether the "premium" subclass should be certified and finds that the motion shall be denied. Defendants argue that the "premium" subclass should not be certified and should be dismissed because (1) they have submitted proof that they paid many claims for water damage claims characterized as

"overflows," by way of an affidavit of their homeowners claim director, Sally Shiminski, and (2) plaintiffs' claim that they were charged excessive premiums must be resolved by the administrative remedies provided in the Michigan Insurance Code, MCL § 500.2113, and by Iowa Code § 515F.6(3). Plaintiffs respond that Shiminski's affidavit only establishes that it pays some overflow claims, and does not answer the question of whether defendants had a policy of broadly applying the paragraph 3(b) exclusion to wrongfully deny coverage whenever water entered a policyholder's basement, regardless of the cause of the water event. Because Shiminski's affidavit merely raises a factual dispute as to whether or not defendant-insurers had a policy of wrongfully denying meritorious water damage claims, class certification should not be denied on the basis of her affidavit.[4]

The court turns now to defendants' argument that plaintiffs must exhaust their administrative remedies by seeking a review and hearing by the insurance commissioner. MCL § 500.2113 provides that where an insurer "has charged an incorrect premium" on a policy for home insurance, she is entitled to "a private informal managerial-level conference with the insurer, and, if that fails, to a review before the commissioner." MCL § 500.2113(1). In McLiechey v. Bristol W. Ins. Co., 408 F. Supp. 2d 516, 524-26 (W.D. Mich. 2006), aff'd, 474 F.3d 897, 898 (6th Cir. 2007), the only case interpreting § 500.2113 relied upon by defendants, the court dismissed plaintiffs' claims for a premium refund for automobile insurance rates claimed to be improperly

---

[4]Defendants do not state the procedural rule under which their motion to dismiss certain claims is based, but if it is Federal Rule of Civil Procedure 12(b)(6), the court may not consider matters outside the pleadings in making its determination.

-13-

based on plaintiffs' credit history. The court concluded that an administrative proceeding before the insurance commissioner provided plaintiffs' only remedy. Id. at 522. McLiechey does not support defendants' claim here that plaintiffs must exhaust their administrative remedies pursuant to Chapter 21 of the Insurance Code. Plaintiffs respond that they "do not complain that their premiums were incorrectly calculated or excessive. Rather, Plaintiffs complain they did not receive all of the coverage that they paid for, and they only seek to use a percentage of the premium as a way to calculate a fair measure of damages." (Doc. 49 at 37). Because plaintiffs' claims amount to a coverage dispute over contractual interpretation of policy language,[5] class certification should not be denied based on MCL § 500.2113[6] which does not apply.

The court turns now to the question of whether the "premium" class claims should be limited to those claims arising no more than one year prior to the filing of this lawsuit on June 19, 2013, or as to the Minnesota policies, no more than two years prior to the filing of this lawsuit, based on contractual limitations periods set forth in the homeowners' policies. Defendants have moved to dismiss all claims occurring outside the contractual limitations period and seek a ruling from this court that discovery be prohibited as to any policyholder claims barred by the contractual limitations period. The proposed class includes those members who paid premiums "from approximately

---

[5]Because defendants have not moved to dismiss the breach of contract and unjust enrichment claims of the premium subclass under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the court does not raise the issue *sua sponte.*

[6]Defendants have also failed to show that plaintiffs must exhaust their administrative remedies under Iowa Code § 515F.6(3).

March 2009 to present." (Complaint, ¶ 53).[7] Each of the policies at issue in this case provides a contractual statute of limitations period.[8] The Michigan homeowner's policy of the named plaintiffs provides:

> 10.   SUIT AGAINST US
>
> We may not be sued unless there is full compliance with all terms of this policy. Suit must be brought within one year after the loss or damage occurs.

(Doc. 49, Ex. A at 11, ¶ 10). There is no dispute that the Iowa, Kentucky, and Wisconsin policies contain a one-year contractual limitations period, stating, "Suit must be brought within one year after the loss or damage occurs." The Minnesota policy contains the same language except that the suit must be brought "within two years." Plaintiffs argue that the contractual limitations period set forth in the policies should not apply but the general statute of limitations periods provided by state law should govern because, among other things, the "premium" class members do not assert any property losses owing under the policies. This argument bears on the viability of their claims, since it is unclear how policyholders, who have not suffered any insured loss, can pursue claims for breach of the policy at all. But this determination is not, as yet, before the court. Plaintiffs also argue that the statute of limitations issue is not ripe for decision

---

[7]The Complaint also seeks to certify all members who filed claims for water damages and received less than $10,000 in claims payments "from approximately March 2009 to present" (Complaint, ¶ 53) but certification of that class has been denied by this order.

[8]According to the Complaint, the relevant states include: Michigan, Illinois, Minnesota, Iowa, Nebraska, North Dakota, Wisconsin, Kentucky and Tennessee. (Complaint, ¶ 9). Defendants do not specifically address the contractual language of the Nebraska, North Dakota, and Tennessee policies in their motion to dismiss, but plaintiffs have not disputed that those policies contain contractual limitations periods which shorten the statute of limitations period for property losses to one-year.

now as "questions involving temporal limitations often intrude into the merits of the case and require development of a complete factual record," and the factual record is not sufficiently developed at this time to make such a determination. (Doc. 49 at 43). Because it is unclear at this time whether an alleged breach of contract occurred, and whether an alleged overpayment of premiums is considered a "loss" under the policy or is recoverable under some other theory, the court shall deny without prejudice defendants' motion to exclude certain claims as time-barred.

The court next considers defendants' request that this court order that any discovery concerning claims outside the contractual limitations period set forth in the policies be barred. Federal Rule of Civil Procedure 26 allows for broad discovery of all relevant nonprivileged matter. Because plaintiffs' theory of the case is that defendant-insurers adopted a company-wide policy of denying meritorious water damage claims beginning in March, 2009, company records, and information dating back until 2009 and possibly before, would be relevant to the Monteleone's individual coverage issue and to the "premium" class members' claims as well. Accordingly, defendant's motion shall be denied.

## **CONCLUSION**

For the reasons stated above, defendants' motion to deny class certification (Doc. 35) as to the "property damage" subclass is GRANTED. Defendants' motion to deny class certification as to the "premium" subclass (Doc. 35) is DENIED WITHOUT PREJUDICE; defendants' motion to dismiss the "premium" class claims (Doc. 35) is DENIED; and defendant's motion to dismiss the "premium" class claims allegedly falling outside the contractual limitations period set forth in the policies (Doc. 35), is DENIED

WITHOUT PREJUDICE. Defendants' request that discovery of matters outside the alleged contractual limitations period be prohibited is DENIED.

**IT IS SO ORDERED**.

Dated: April 23, 2014

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 23, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk