UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK MONTELEONE
and SHERI MONTELEONE,

        Plaintiffs,

v.

        CASE NO. 13-CV-12716
        HONORABLE GEORGE CARAM STEEH

THE AUTO CLUB GROUP, and
MEMBERSELECT INSURANCE
COMPANY, et al.,

        Defendants.
_____/

## OPINION AND ORDER

This putative class action involves an insurance coverage dispute arising out of plaintiffs', Frank and Sheri Monteleone, claim under their homeowner's policy for over $100,000 of water damage in their finished basement. (Amended Complaint, ¶ 25, 27). Jurisdiction is based on the Class Action Fairness Act ("CAFA"), pursuant to 28 U.S.C. § 1332(d), because the amount in controversy allegedly exceeds $5 million and at least one member is a citizen of a different state than defendant. Defendants are insurance companies The AutoClub Group, MemberSelect Insurance Company, AutoClub Insurance Assoc., Auto Club Group Insurance Co., Auto Club Property-Casualty Insurance Co., and Auto Club Services (collectively "defendants"). Plaintiffs seek to proceed as a class action under the theory that defendants categorically denied valid claims based on an erroneous application of the policy terms, and that all individuals who merely purchased insurance,

even those who never filed claims, are entitled to a partial refund of premiums, or like measure of damages, because certain coverage was allegedly illusory.

Plaintiffs filed a three count complaint. Count I seeks declaratory judgment that defendants' alleged interpretation of certain policy provisions was erroneous; Count II alleges breach of contract on behalf of all homeowners who purchased policies, including those individuals who never filed claims; and Count III alleges breach of contract and the covenant of good faith and fair dealing on behalf of the those policyholders whose legitimate claims for water damage were improperly denied. Now before the court is defendants' joint motion to dismiss Count II of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to deny class certification. Oral argument was heard at motion day at the University of Michigan Law School on October 30, 2014. For the reasons set forth below, defendants' motion shall be granted.

## I. BACKGROUND

On January, 17, 2013, plaintiffs suffered water damage in their finished basement of their Clinton Township home which caused significant harm, including loss of personal property, and structural damage to their home. (Amended Complaint, ¶ 25). Plaintiffs claim the water damage has been traced to a faulty back flow preventer in the plumbing waste line that extends under the slab in their basement. *Id.* at ¶ 26. They claim coverage for the loss existed under the policy's provision providing that insured perils include:

> 13. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance.

*Id.* at ¶ 44 (quoting Homeowner's Policy at p. 8, ¶ 13). Plaintiffs claim they paid for coverage of water damage claims where water originating from within the home is

prevented from leaving the premises. *Id. at* ¶¶ 6-7. Specifically, plaintiffs claim they paid for coverage for water damage losses where water "(1) from the home is unable to reach the municipal sewer (2) due to a blockage or other plumbing failure (3) which forces the exiting water to re-enter the home through a basement or floor drain." *Id.* at ¶ 5. Plaintiffs describe such water damage events as "overflows" which they claim were covered losses under their homeowner's insurance policies. *Id.* at ¶ 44(citing Homeowner's Policy at p. 8, ¶ 13). Defendants denied coverage under the policies' exclusion ¶ 3.b which provides no coverage exists for:

> water or water-borne material which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

*Id.* (quoting Homeowner's Policy at p. 9 ¶ 3.b). Optional endorsements are available to surplant this exclusion which provide limits usually between $5,000 to $25,000. Named plaintiffs had purchased such an endorsement in this case, and under this option, defendants disclaimed liability and coverage above the $5,000 provided on the endorsement. *Id.* at ¶ 28. Plaintiffs claim that defendants wrongfully denied coverage under the policy and failed to investigate the cause of their loss. *Id.* at ¶ 26.

There is no dispute that under the policies, claims for "backups" were not covered. "Backups" occur when water originates from an external source, like a municipal sewer system. *Id.* at ¶ 7. Specifically, the policies describe "backups" which are excluded from coverage under ¶ 3.b, *supra*, and ¶ 13.c which provides that no coverage exists for loss:

> caused by or resulting from water which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

*Id.* at ¶ 44 (citing Homeowner's Policy at p. 8, ¶ 13.c). Plaintiffs claim that beginning in 2009, defendants began conflating all "overflow" losses as "backups" and wrongfully denied claims for "overflow" losses. *Id.* at ¶¶ 48-49. In support of this claim, plaintiffs rely on an e-mail written by defendants' director of claims, Nicole Whitlow, which states that "[a]ny claim reported with water back up or overflow coming from a basement drain is not a covered loss unless the insured has purchased the H-500 endorsement." *Id.* at ¶¶ 49-50.

Plaintiffs original complaint sought to certify two categories of policyholders as class plaintiffs: (1) "property damage subclass" plaintiffs, and (2) the "premium subclass" plaintiffs. The proposed "property damage" class were those individuals meeting the following criteria:

> All persons who made water-related property damage claims under one or more of Defendants' Homeowners Insurance policies and received less than $10,000 in claim payments from Defendants at any time from approximately March 2009 to the present.

(Complaint at ¶ 53). In a written order dated April 23, 2014, this court denied class certification as to the above described "property damage" plaintiffs, because issues of liability and damages as to each individual policyholder would predominate over any common questions. The "premium" subclass was described as *all* individuals who merely purchased homeowners' insurance from the defendants since March, 2009, regardless of whether these individuals filed any loss claims. The court denied defendants' previous motion to deny class certification as to the "premium" subclass on the narrow grounds articulated in defendants' brief, but did *not* certify the subclass.

In plaintiffs' Amended Complaint, plaintiffs once again seek to certify two subclasses. First, they seek to certify "All persons who purchased one or more of the identified

insurance policies from Defendants at any time during the applicable statute of limitations periods (the "Class")" (Amended Complaint ¶ 91). For ease of reference, this court refers to those putative class members as the "premium" class. Plaintiffs claim that damages to class members are "a uniform percentage of premiums associated with the promised-but-not-provided overflow coverage." (Amended Complaint, ¶ 72). The second proposed class, is defined as:

> All Class members who submitted property damage claims involving water damage who received less than full payment from Defendants due to Defendants' application of the Whitlow Directive (the "Property Damage and Appraisal Subclass"). Excluded from the Subclass is any Class member whose claim was properly investigated, properly paid or properly denied by Defendants.

*Id.* at ¶ 92. The "Property Damage and Appraisal Subclass" as described in the Amended Complaint is substantially the same subclass that this court already ruled may not be certified. In their response brief, plaintiffs appear to concede that the court's April 23, 2014 order precludes certification of the "property damage" class. (Doc. 75 at 29). Accordingly, defendants' motion to deny certification of the "Property Damage and Appraisal Subclass" shall be granted. The court now turns its attention to defendants' motion to dismiss Count II.

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether

plaintiff's factual allegations present plausible claims. "[N]aked assertions devoid of further factual enhancement" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atlantic*, 550 U.S. at 555) (citations and quotations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* (*citing Bell Atlantic*, 550 U.S. at 555).

### III. ANALYSIS

**A.    Plaintiffs Fail to State a Claim for Breach of Contract as an Insurer Owes no Duty until a Policyholder Suffers a Covered Loss.**

Defendants seek to dismiss Count II. Count II alleges breach of contract arising out of defendants' alleged policy of denying certain legitimate "overflow" claims. (Amended Complaint, ¶¶ 121-131). Count II is brought on behalf of the "premium class" - that is, on behalf of *all* policyholders, regardless of whether they sought coverage for water damage. Plaintiffs claim they paid for "phantom coverage," *Id.* at ¶ 56, and seek damages for "the value of basement and floor drain overflow coverage and protection that policyholders were never going to receive." *Id. at* ¶ 131. Plaintiffs have cited no controlling authority in support of their novel theory.

Under Michigan law, the elements of breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of

certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999). Once the plaintiff establishes the elements of a contract, it must then establish that the contract was breached and damages resulting from the breach. *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512 (2003). "Non-performance is not a breach unless performance is due." *Woody v. Tamer*, 158 Mich. App. 764, 772 (1987) (quoting Restatement (Second) of Contracts § 235, cmt. b (1981)). Even taking all of the allegations of the Amended Complaint as true, plaintiffs have failed to state a claim for breach of contract arising out of the theory that all homeowners paid for certain coverage for which they did not receive. Unless plaintiffs filed a claim with their insurer, performance was not due and plaintiffs cannot establish a breach under the policy. In the absence of a duty, there can be no breach. *See Colony Ins. Co. v. Suncoast Med. Clinic*, 726 F. Supp. 2d 1369, 1379 (M.D. Fla. 2010) ("Unless the insured can demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify whatsoever.") (internal quotation marks and citations omitted).

Insurance is "a contract to pay a sum of money upon the happening of a particular event or contingency." 1 Couch on Ins. § 1:6 at 1-17 (3d Ed. 2014). Put another way, "[t]he essence of an insurance policy is a promise by the insurer to compensate the insured for the loss of something of value that is covered under the policy, thereby shifting the risk of loss from the insured to the insurer." *Kartman v. State Farm Mut. Auto.* Ins., 634 F.3d 883, 890 (7th Cir. 2011). In *Kartman*, the Seventh Circuit reversed the district court's order certifying as a class a group of policyholders who claimed State Farm used an inconsistent standard for evaluating property damage claims arising out of a hail storm. Class members

sought an injunction requiring State Farm to reinspect their roofs using a "uniform, and reasonable, and objective" standard. *Id.* at 886. The court found that State Farm's only duty was to pay covered losses, and its methods in so doing did not create a separate basis for liability. *Id.* at 890. So too here. If defendants' method of reviewing water damage claims relied on an improper interpretation of policy provisions, this alleged error does not give rise to a cognizable claim. For those plaintiffs who never suffered water damage, no covered loss occurred and defendants owed no duty to them. Defendants' duty to perform under the insurance contracts does not arise unless a homeowner submits a valid claim. Moreover, as to the plaintiffs who never filed property loss claims, they can show no actual injury.

Both sides cite to *Union Labor Life Ins. Co. v. Perino*, 458 U.S. 119 (1982) in support of their opposing positions. That case involved the question of whether a health insurance company's use of a peer review system to evaluate whether chiropractic claims were reasonable and necessary, as defined by the policy, were exempt from federal antitrust laws as the "business of insurance." *Id.* at 122. While the circumstances of that decision are far afield from the situation presented here, the Court's explanation of how insurance policies transfer risk is instructive:

> The transfer of risk from insured to insurer is effected by means of the contract between the parties-the insurance policy-and that transfer is complete at the time that the contract is entered. . . . Petitioner's argument contains the unspoken premise that the transfer of risk from an insured to his insurer actually takes place not when the contract between those parties is completed, but rather only when the insured's claim is settled. This premise is contrary to the fundamental principle of insurance that the insurance policy defines the scope of risk assumed by the insurer from the insured.

*Id.* at 130-31.

Once the insurance contract is executed, the insurer is on the hook for all of the risks delineated in the policy. The transfer of risk occurred when the policy went into effect and the policy defines the risk assumed by the insurance companies. An insurance company cannot avoid its duty to pay legitimate claims by an internal scheme to violate the terms of the policy. The policyholder retains the right to have the policy enforced according to its written terms and to pursue the denial of a legitimate claim in court. "[A]n insurance contract must be enforced in accordance with its terms." *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354 (1999). Only once a claim is wrongfully denied, does an insured have a breach of contract claim.

**B.    None of the Precedent Relied Upon by Plaintiffs Supports Their Claims**

Plaintiffs have cited no controlling authority in support of their novel theory of recovery. The few cases cited by plaintiffs are distinguishable and none involved a refund of premiums in circumstances like those presented here. Rather, those cases involved instances where premiums were paid even though no insurance contract was accepted or formed, bonds in the surety context were at stake, insurance contracts had expired, and the insurance contract was illegal.

Plaintiffs rely on cases where insurance agents were held liable to return premiums where they failed to purchase policies at all. *See Simpson v. M-P Enter., Inc.*, 252 So.2d 202, 206 (Miss. 1971) (insurance agent ordered to return premiums where he failed to purchase the requested endorsement); *Autumn Ridge, L.P. v. Acordia of Va. Ins. Agency, Inc.*, 613 S.E.2d 435, 440 (Va. 2005) (insurance agent ordered to return premiums for negligent failure to procure an insurance policy). Clearly, these negligent failure to procure insurance cases have no relevance here.

-9-

The holding of *Hack v. American Surety Co.*, 96 F.2d 939 (7th Cir. 1938) that plaintiff was entitled to a return of premiums paid after the contract was ended also fails to support plaintiffs' theory. In *Hack*, a surety company issued a bond limited to $25,000 for misfeasance by bank officers. *Id.* at 940. The bonding company paid the full $25,000 for the bank officer's misfeasance, but continued to collect premiums even though it had no risk of additional liability. *Id.* at 945-46. Under these circumstances, the court held that the bondholders were entitled to a refund of premiums paid after the surety had paid the maximum liability provided by the policy and no more duty to provide coverage existed. *Id.* The court likened the situation to the case where an erroneous premium is paid on a life insurance policy because of a mistake as to the age of the insured. *Id.* at 945. *Hack* is markedly distinguishable from the situation presented here. Similarly, plaintiffs' reliance on *Commissioners of Leonardtown v. Fidelity & Cas. Co.*, 270 A.2d 788, 791 (Md. Ct. App. 1970) is also misplaced as that case involved the return of premiums collected after the surety bond for employee embezzlement was exhausted. Plaintiffs' reliance on cases interpreting surety contracts is also suspect given the Sixth Circuit's observation that "[s]urety contracts and insurance contracts are conceptually and legally distinct." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 337 (6th Cir. 2007).

*Latta v. Farmers County Mut. Fire & Ins. Co.*, 313 S.E.2d 214 (N.C. Ct. App. 1984) also fails to support plaintiffs' theory of recovery. In *Latta*, a hail insurance policy contained a provision which excluded coverage if the insured had "other insurance," including federal crop insurance, but failed to so notify the insurer. *Id.* at 215. Plaintiff failed to notify the insurer that he had federal crop insurance; thus, the insurance

-10-

company was not liable under the policy. *Id.* Given plaintiff's failure to provide the required notice, the court held that the defendant was never at risk under the policy and plaintiff was entitled to a return of premiums. *Id.* at 216. By contrast, this case does not involve an "other insurance" clause, and no facts suggest that the policy was "void ab initio" as in *Latta*.

Finally, plaintiffs rely on *Dornberger v. Met. Life Ins. Co.*, 961 F. Supp. 506 (S.D.N.Y. 1997). *Dornberger* involved the return of partial premiums to an insured where the policy was rescinded because sold in violation of European law. *Id.* at 538-40. The instant dispute involves no illegality or rescission and unlike *Dornberger*, plaintiffs seek to enforce, not invalidate, their policy.

In addition to their written response, at oral argument plaintiffs' counsel presented the court with a thirteen-page power point presentation which cited to Insurance treatises and cases, some of which were addressed in their written submissions, but many of which were not. The court has considered those submissions but does not find that the materials cited alters the court's conclusion here that plaintiffs have failed to state a viable breach of contract claim. The dearth of any relevant authority in support of their novel theory of recovery compels dismissal of their breach of contract claim as to the "premium" class.

**C.     Defendants Assumed the Risk; thus, Policyholders May Not Recover Premiums**

In addition, defendants are entitled to dismissal of Count II because they assumed the risks stated in the insurance policies, thus making plaintiffs' premiums non-refundable. Once the parties entered into the insurance contract, the insurer

assumed the risk and is obligated to pay claims according to the policy terms. Whether the insurers had an internal policy of denying claims in contravention of the policy language is irrelevant, as in any coverage dispute, it is the court that will ultimately construe the policy language and determine its meaning. *Angott v. Chubb Group Ins.*, 270 Mich. App. 465, 473 (2006). It is a general rule of insurance law that:

> an insured may not have any part of his or her premium returned once the risk attaches, even if it eventually turns out that the premium was in part unearned. This rule is based upon just and equitable principles, for the insurer has, by taking upon itself the peril, became entitled to the premium.

5 Couch on Ins., § 79:7 (3d Ed. 2014). In *Humana Health Care Plans v. Snyder-Gilbert*, 596 N.E.2d 299 (Ind. Ct. App. 1992), plaintiff sought the return of premiums paid for her husband's health insurance when his medical claims were significantly less than the premiums she had paid and the insurer had wrongfully denied his valid claim based on a computer glitch. The court observed that "[i]t is axiomatic that a court cannot award a refund of premiums paid to secure insurance once the insurance company has been put *at risk* on behalf of the insured." *Id.* at 300 (collecting cases). In ruling that no refund of premiums was owing, the court reiterated the holding of the Indiana Supreme Court that "[i]f a policy is valid at its inception, then the company can not be required to refund the premiums received." *Id.* (quoting *Standley v. Northwestern Mut. Life Ins. Co.*, 95 Ind. 254, 258 (1883)).

      Because defendant-insurers were at risk for any legitimate claims once the insurance contract was executed, there is no basis for the return of any premiums. *See Euclid Nat'l Bank v. Fed. Home Loan Bank Bd.*, 396 F.2d 950, 951 (6th Cir. 1968) (recognizing the well-settled rule that "an insured may not have any part of his premium

returned once the risk attaches, even if it eventually turns out that the premium was in part unearned") (internal quotation marks and citations omitted); *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387-88 (Ind. Ct. App. 2004) (no return of premiums allowed where policy valid at its inception); *James R. Soda, Inc. v. United Liberty Life Ins. Co.*, 494 N.E.2d 1099, 1100 (Ohio 1986) ("once an insurer's legal risk has attached . . . the insured is not entitled to a return of any part of the premiums paid."). For the reasons stated above, defendants' motion to dismiss Count II of the Amended Complaint shall be granted.

**D.     Denial of Class Certification**

Having dismissed Count II of the Amended Complaint, defendants' motion to deny certification of the "premium" class is now moot as stated in their written reply brief. (Doc. 83 at 11, n.3). For the reasons stated in this court's April 23, 2014 opinion denying class certification of the "property damage subclass," defendants' motion to deny class certification of the "property damage and appraisal subclass" shall be granted.

## IV. CONCLUSION

For the reasons stated above, defendants' motion (Doc. 67) to dismiss Count II is GRANTED and defendants' motion to deny class certification (Doc. 67) is GRANTED. Because the sole basis for this court's subject matter jurisdiction was the Class Action Fairness Act, plaintiffs are ORDERED TO SHOW CAUSE in writing on or before January 29, 2015, in a brief of no more than ten pages, why this case should not be dismissed for lack of jurisdiction. Defendants may file response of no more than ten pages within twenty-one days after service of the plaintiffs' response to the show cause order. Plaintiffs may file a reply of no more than five pages within fourteen days after service of the response.

**IT IS SO ORDERED**.

Dated: January 5, 2015

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 5, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk