UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK MONTELEONE, and
SHERI MONTELEONE,

                    Plaintiff,

                                          CASE NO. 13-CV-12716
        v.                                HONORABLE GEORGE CARAM STEEH

THE AUTO CLUB GROUP, el al.,

                    Defendants.
_____/

                    <u>OPINION AND ORDER</u>

        This putative class action arises out of plaintiffs' claims for homeowners' insurance

coverage for water damage in their basements.  The named plaintiffs, Frank and Sheri

Monteleone, seek over $100,000 in damages.   (Amended Complaint, ¶ 25, 27).

Defendants are insurance companies The AutoClub Group, MemberSelect Insurance

Company, AutoClub Insurance Assoc., Auto Club Group Insurance Co., Auto Club

Property-Casualty Insurance Co., and Auto Club Services (collectively "defendants").

Plaintiffs originally sought to proceed as a class action under three theories as set forth in

their three-count amended complaint: (1) certification under Federal Rule of Civil Procedure

23(b)(2) seeking a declaration as to the meaning of certain allegedly ambiguous coverage

and exclusion provisions within the insurance policy, (2) certification under Rule 23(b)(3)

for breach of contract on the theory that defendants categorically denied valid claims based

on an erroneous application of the policy terms, and that all individuals who merely

purchased insurance, even those who never filed claims, are entitled to a partial refund of

-1-

premiums because certain coverage is allegedly illusory, and (3) certification under Rule 23(b)(3) for breach of contract arising out of rejected claims for certain water damage in plaintiffs' basements. By prior written orders of the court, class certification under both the second and third theories for breach of contract has been denied. In addition, Count II, which sought relief of partial premiums paid under the "phantom coverage" theory, has been dismissed. The court is left now to decide whether class certification is appropriate under Rule 23(b)(2) for the declaratory judgment claim.

Now before the court are: (1) plaintiffs' motion for partial summary judgment and declaratory relief which seeks judicial interpretation of certain contested policy terms and exclusions, and (2) plaintiffs' motion for certification of the declaratory judgment class in the Monteleone's case, 13-12716. The Bushway plaintiffs in the companion case, 14-11417, have joined in the motion for declaratory relief, but not in the motion for class certification. Oral argument was delayed at the parties' request as they were engaged in settlement negotiations. A hearing was eventually held on June 16, 2015. For the reasons set forth below, plaintiffs' motion for partial summary judgment shall be granted in part and denied in part, and plaintiffs' motion for class certification shall be denied.

## I. Background

On January, 17, 2013, plaintiffs suffered water damage in their finished basement of their Clinton Township home which caused significant harm, including loss of personal property, and structural damage to their home. (Amended Complaint, ¶ 25). Plaintiffs claim the water damage has been traced to a faulty back flow preventer in the plumbing waste line that extends under the slab in their basement. *Id.* at ¶ 26. They claim coverage for the loss existed under the policy's provision providing that insured perils include:

-2-

13. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance.

*Id.* at ¶ 44 (quoting Homeowner's Policy at 8, ¶ 13). Plaintiffs claim they paid for coverage of water damage claims where water originating from within the home is prevented from leaving the premises. *Id.* at ¶¶ 6-7. Specifically, plaintiffs claim they paid for coverage for water damage losses where water "(1) from the home is unable to reach the municipal sewer (2) due to a blockage or other plumbing failure (3) which forces the exiting water to re-enter the home through a basement or floor drain." *Id.* at ¶ 5. Plaintiffs describe such water damage events as "overflows" which they claim were covered losses under their homeowner's insurance policies. *Id.* at ¶ 44 (citing Homeowner's Policy at 8, ¶ 13). Defendants denied coverage under the policies' exclusion ¶ 3.b which provides no coverage exists for:

water or water-borne material which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

*Id.* at ¶ 45 (quoting Homeowner's Policy at 9, ¶ 3.b). Optional endorsements are available to override this exclusion which provide limits usually between $5,000 to $25,000. Named plaintiffs had purchased such an endorsement in this case, and under this option, defendants disclaimed liability and coverage above the $5,000 provided on the endorsement. *Id.* at ¶ 28. Plaintiffs claim that defendants wrongfully denied coverage under the policy and failed to investigate the cause of their loss. *Id.* at ¶ 26.

There is no dispute that under the policies, claims for "backups" were not covered. "Backups" occur when water originates from an external source, like a municipal sewer

-3-

system. *Id.* at ¶ 7. Specifically, the policies describe "backups" which are excluded from coverage under ¶ 3.b, *supra*, and ¶ 13.c which provides that no coverage exists for loss:

> caused by or resulting from water which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

*Id.* at ¶ 44 (citing Homeowner's Policy at p. 8, ¶ 13.c). Plaintiffs claim that beginning in 2009, defendants began conflating all "overflow" losses as "backups" and wrongfully denied claims for "overflow" losses. *Id.* at ¶¶ 48-49. In support of this claim, plaintiffs rely on an e-mail written by defendants' director of claims, Nicole Whitlow, which states that "[a]ny claim reported with water back up or overflow coming from a basement drain is not a covered loss unless the insured has purchased the H-500 endorsement." *Id.* at ¶¶ 49-50.

In their motion for summary judgment, plaintiffs seek a declaration that (1) the policy in question afforded property and contents coverage for water overflow losses, (2) the ¶ 3.b exclusion does not apply to basement/floor drain water claims caused by water originating from within the resident premises, and (3) defendants bear the burden of establishing that an exclusion applies.[1] Defendants oppose the relief sought.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions

---

[1] In their reply brief, plaintiffs modify the declaratory relief sought. Because a reply brief is the last pleading filed and an opposing party has no right to file additional papers, the Sixth Circuit has squarely held that it is impermissible to raise an issue for the first time in a reply brief. *United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989). Thus, the court shall consider the declaratory relief sought in plaintiffs' original motion only.

-4-

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean*

-5-

*v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in

the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence

supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be

evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at

800 (*citing Anderson*, 477 U.S. at 252).

### III. Analysis

**A.      Plaintiffs' Motion for Declaratory Relief**

**1.  Principles of Insurance Policy Construction**

Insurance policies are subject to the same rules of contract construction as any

other contract.  *Rory v. Continental Ins. Co.*, 473 Mich. 457, 461 (2005).  Where the text

of an insurance policy is clear and unambiguous, the court must enforce the provision as

written.  *Id.*  In interpreting an insurance policy, the court is to give the written terms their

ordinary and plain meaning.  *Id.* at 464.  If, on the other hand, a policy provision is

ambiguous, the ambiguity will be resolved in favor of the insured.  *Fire Ins. Exchange v.*

*Diehl*, 450 Mich. 678, 687 (1996).  "[T]echnical or constrained constructions are to be

avoided."  *UAW-GM Human Resource Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486,

491-492 (1998) (citations omitted)).  "Clear and specific exclusionary provisions must be

given effect, but are strictly construed against the insurer and in favor of the insured."

*Hastings Mut. Ins. Co. v. Safety King, Inc.*, 286 Mich. App. 287, 292 (2009) (citations

omitted).

It is a cardinal principle of construction that a contract is to be construed as a whole;

all of its parts are to be harmonized so far as reasonably possible.  *Laevin v. St. Vincent*

*De Paul Soc'y of Grand Rapids*, 323 Mich. 607, 609 (1949).  No part of a contract is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable. *Id.* at 610.  "Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." *Id.* at 610 (internal quotation marks and citations omitted).

### 2.      Declaration that Policy Covers all "Overflow" Losses

In their motion for summary judgment on their claim for declaratory judgment, plaintiffs seek a court ruling that "Defendants' "All-Risk" Homeowners' policy afforded property and contents coverage for water overflow losses." (Doc. 78 at 13).  The requested declaration shall be denied inasmuch as the policy interpretation sought is overly broad and ambiguous and fails to resolve any disagreement between the parties as to the correct interpretation of the policies.  Because there is no dispute that defendant-insurers cover many "overflows" as defined by ¶ 13, it does not appear that the ruling plaintiffs seek is necessary to resolve an actual dispute between the parties, or whether such a ruling would in fact resolve the dispute if one does, in fact, exist.  It appears that the parties' real dispute is over the question of when the exclusions set forth in ¶¶ 3.b and 13.c bar coverage of certain water losses involving basement/floor drains.  That issue is addressed below.

### 3.      Declaration of Policy Meaning of ¶  3.b Exclusion

In their motion for summary judgment, plaintiffs also seek a policy interpretation that "the ¶ 3.b exclusion does not apply to basement/floor drain water claims caused by water originating from within the resident premises." *Id.*   For the reasons set forth below, the

court shall grant plaintiffs' motion and issue a declaratory judgment that the policy so

provides. As stated *supra*, ambiguities within the policy are resolved in favor of the insured.

Paragraph 13 provides coverage exists for:

> 13. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance.

(Amended Complaint at ¶ 44 (quoting Homeowner's Policy at p. 8, ¶ 13)). Exclusion ¶ 3.b

provides no coverage exists for:

> water or water-borne material which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

*Id.* (quoting Homeowner's Policy at p. 9 ¶ 3.b). In their papers, defendants appear to agree

with the court's assessment that the coverage provision of ¶ 13 and the ¶ 3.b exclusion are

ambiguous. They claim to have resolved this conflict by interpreting the policy to require

coverage for damage caused by water which backs up through any drain other than a

basement or floor drain, including toilets, sinks, and other appliances, even where the water

originates from a municipal sewer backup. Defendants contend their interpretation is

reasonable, and actually provides more coverage than the interpretation argued by

plaintiffs. Furthermore, defendants claim that their "interpretation of the [¶ 3.b exclusion]

clause has never been addressed in any other case." (Doc. 86 at 2).

Defendants' interpretation of the policy is not grounded in the actual written terms

of the policy, and defendants appear to admit as much. The court rejects defendants'

interpretation because it would render the coverage provided for occurrences involving

accidental discharge of overflows of water from within a plumbing system meaningless in

-8-

many instances.  Plaintiffs' interpretation, on the other hand, offers a solution to the ambiguity which gives meaning to every term of the policy.  Defendants argue that the ¶¶ 3.b and 13.c exclusions can be read in conformity with coverage provided for in ¶ 13 for the accidental discharge or overflow of water from within a plumbing system.  Defendants state the following:

> The sewer-or-drain exclusion clearly does not swallow or negate the coverage.  That's because not all overflows and discharges within the insured's plumbing system come from drain backups.  For example, there would be coverage and the backup exclusion would not apply to: a clogged toilet, pipes leaking or bursting; water escaping from a crack in a hot water tank; broken water lines attached to appliances; water damage involving an air conditioner, humidifier or other appliance; and an overflow in a sink or bathtub where the water is left on and the drain is stopped up by a plug.  All of these instances show that there is substantial coverage of overflows and discharges and the sewer-or-drain exclusion clearly does not swallow the coverage.

(Doc. 86 at 14-15).  While defendants' argument addresses certain circumstances where they admit coverage exists, it does not address the ambiguity in the policy as to whether coverage exists for water which enters the home through a basement or floor drain caused by water originating within the home.

At oral argument, plaintiffs argue that their interpretation is consistent with the manner in which defendants interpreted homeowners' policies prior to 2009.  In support of this argument, plaintiffs relied on defendants' claims adjuster's training manual which indeed comports with the interpretation plaintiffs urge here.  (Amended Complaint, ¶ 6). At oral argument, defendants largely conceded that prior to 2009, their interpretation of the homeowners' policies were consistent with the interpretation of the policies plaintiffs advocate for here, but argued that their prior interpretation of the policies is at odds with the

plain language of the policies. Having already found the language to be ambiguous, the court does not find this argument convincing.

Numerous courts in other jurisdictions faced with the same or similar policy provisions deemed ambiguous here have adopted the interpretation urged by plaintiffs. In *Pichel v. Dryden Mut. Ins. Co.*, 986 N.Y.S.2d 268, 271 (3d Dep't 2014), for example, the court held that the competing policy provisions there required coverage for "an occurrence originating within the insured's property (i.e., in a property owner's plumbing system)" but excluded coverage for "a backup that originates off an insured's property (i.e., in a municipal sewer or drain)." Collecting cases from multiple jurisdictions reaching the same result, the court explained:

> In short, these cases stand for the proposition that water damage caused by a backup/overflow that originates from a pipe or clogged drain located within the insured's property line comes from the insured's plumbing system and is covered by the policy; conversely, if the cause of the backup/overflow is from outside the insured's property boundaries - such as a clogged municipal sewer that forces water from outside the insured's plumbing system to overflow- the sewer or drain exclusion is applicable.

*Id.* In light of the ambiguity between the coverage provided in ¶ 13 and the ¶ 3.b exclusion, those policy terms can be reconciled under the same analysis employed by the *Pichel* court.

Defendants argue that *Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exch.*, 212 Cal. App. 4th 69 (2012) stands for the proposition that the back-up exclusion applies even where the blockage originates inside the insured's premises. In that case, the homeowner sustained damage when a toilet overflowed caused by a blockage in the sewer line. *Id.* at 72. The policy excluded coverage for losses caused by "[w]ater that backs up or overflows from a sewer, drain or sump." *Id.* at 74. The policyholder argued the exclusion did not

apply because the water must come out of the sewer or drain and not a toilet.  *Id.*  The court disagreed finding the exclusion unambiguous and denied coverage.  Plaintiffs argue that *Cardio Diagnostic* is distinguishable because it excluded both "back ups" and "overflows" whereas the ¶ 3.b exclusion here only applies to back ups.  In addition, the court in that case was not addressing a policy provision which provided for coverage for accidental discharge or overflow of a "plumbing system."  In that case, the court did not address competing policy provisions, nor did it attempt to resolve an ambiguity like that at issue here.

Defendants argue that several courts have rejected plaintiffs' "outside origin" theory, but those cases are distinguishable.  In *Penn-Am. Ins. Co. v. Mike's Tailoring*, 125 Cal. App. 4th 884, 892 (2005), the court rejected the insured's argument that coverage existed because the sewage backup was caused by a blockage of the sewer on its own premises.  The court distinguished its holding from other cases adopting plaintiff's argument, noting those cases involved policy provisions specifically covering an accidental discharge of water from within a plumbing system.  *Id.* at 893.  Similarly, as to the other cases cited by defendants which involved denials of coverage for losses caused by backups from sewers in the plaintiffs' own yard, none of those cases involved policy clauses which provided for coverage for water losses caused by a homeowner's "plumbing system."  *See Commandments, Inc. v. Penn-Am. Ins. Co.*, 2010 Phila. Ct. Com. Pl. LEXIS 394, at *5 (2010); *Campbell v. Allstate Ins. Co.*, 2006 Pa. Dist. & Cnty. Dec. LEXIS 198, at *13 (2006).  Similarly, defendants' reliance on *Newlo Realty Co. v. U.S.F. & G. Corp.*, 624 N.Y.S.2d 33, 34 (1995) fails to support their interpretation as it  involved denial of coverage for a blocked-up bathroom sink drain, and there is no discussion in that one page decision

discussing a coverage term, like the one at issue here, providing for losses resulting from an accidental discharge from a homeowner's plumbing system.

Defendants contend that plaintiffs' policy interpretation ignores the word "drains" in the ¶ 3.b exclusion, and impermissibly renders the word mere surplusage or negates it. Plaintiffs respond that the ambiguity, if any, in the policy is caused by the use of the terms "overflow" in ¶ 13 and that same term and the term "backs up" in ¶ 3.b, and that the word "drains" is not surplusage because it excludes water which "backs up" through drains, but not water which "overflows" through drains caused by water in a plumbing system within the home. Plaintiffs' argument is persuasive.

Additional support for plaintiffs' interpretation of the ¶ 3.b exclusion lies in the policy language surrounding that provision. The other exclusions set forth in ¶ 3 involve only water losses occurring outside the premises: ¶ 3.a excludes losses from "flood, surface water, waves, tidal water or overflow of a body of water," and ¶ 3.c excludes losses from subsurface water. Defendants respond that the placement of the ¶ 3.b exclusion is not significant because the similar ¶ 13.c exclusion is set forth within a paragraph of the policy which involves problems originating inside the insured's premises, namely ¶ 13.a excludes loss "to the system or appliance from which the water or steam escapes," and ¶ 13.b excludes loss "caused by or resulting from freezing." While defendants' observation regarding the placement of the ¶ 13.c clause is no doubt accurate, nonetheless the language surrounding the ¶ 3.b exclusion offers additional support to plaintiffs' interpretation.

In sum, the court adopts plaintiffs' interpretation of the ¶ 3.b exclusion, as argued in their original motion for summary judgment. This declaration reconciles an ambiguity

resulting from the coverage provision for accidental discharge of water within a plumbing system as set forth in ¶ 13, and the exclusion for backups through sewers or drains as set forth in ¶ 3.b.  This holding is supported by persuasive case law from other jurisdictions, is bolstered by the policy language surrounding the exclusion, and comports with the rule that ambiguities in a policy are resolved against the insurer.  Additional support for this conclusion lies in the fact that defendants employed this policy interpretation prior to 2009.

### 4.    Burden of Proof

Plaintiffs also seek declaratory judgment that defendants bear the burden of proof that a policy exclusion applies.  The law is well settled that an insured bears the burden of establishing that there is coverage under the terms of the policy.  *Hunt v. Dreilick*, 496 Mich. 366, 373 (2014).   Once an insured proves coverage exists under the terms of the policy, the insurer bears the burden of proving that coverage is negated by an exclusion. *Id.*  "[E]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Id.* (quoting *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567 (1992)).

### B.    Plaintiffs' Motion for Class Certification

### 1.    Standard of Law for Class Certification

The court now turns to plaintiffs' motion for class certification under Rule 23(b)(2). By prior order of the court, plaintiffs' motion to certify a class seeking monetary relief under Rule 23(b)(3) was denied as individual issues of liability predominated over any common question regarding the interpretation of the ¶¶ 3.b and 13.c exclusions set forth in the homeowner's policy.  Having lost certification of that class seeking monetary relief, plaintiffs now seek to certify a class for the sole purpose of providing notice of the court's declaratory

relief to potential litigants, who are not eligible to proceed as a class in this or any other court, but may only bring individual suits for money damages.  For the reasons set forth below, plaintiffs' motion for certification under Rule 23(b)(2) shall be denied.

In order to determine whether to grant class certification, the court is required to engage in a "rigorous analysis" which may require analysis behind the pleadings.  *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, __, 131 S. Ct. 2541, 2551 (2011); *Gooch v. Life Investors Ins. Co.*, 672 F.3d 402, 417-18 (6th Cir. 2012).  "The class-action device is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrand*, __ U.S. __, __, 133 S. Ct. 1426, 1432 (2013) (internal quotations and citations omitted).  Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).  For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotation marks and citations omitted).  District courts have broad discretion in certifying class actions, and their decisions on whether to certify a class will only be set aside under the abuse of discretion standard. *Califano*, 442 U.S. at 703.  In order to be classified as a class action, the four threshold requirements of Rule 23(a) must be met which requires numerosity, commonality, typicality, and adequacy of representation.  In addition to satisfying those prerequisites, the action must fall within one of the three categories of Rule 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs bear the burden of proving that they satisfy all the

-14-

requirements for class certification.  *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir. 1994).

In their opening brief, plaintiffs argue that they have met the four requirements of Rule 23(a), numerosity, commonality, typicality, and adequate representation.  In their written response, defendants concede that the Rule 23(a) requirements have been met. Once the requirements of Rule 23(a) have been met, plaintiffs must establish that they are entitled to certification of one of the three methods set forth under Rule 23(b).  Plaintiffs seek to proceed under Rule 23(b)(2) which provides for class certification where:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2).  Plaintiffs argue certification is necessary to avoid the risk that other courts will make inconsistent rulings regarding policy interpretation of the ¶ 3.b and ¶ 13.c exclusions, and to give notice to potential class members that their insurance claims for water damage may not have been fully compensated.  Defendants oppose certification on the grounds that (1) declaratory relief would inure to the benefit of all similarly situated policyholders without certification, (2) class notice is unwarranted, and (3) the defined class is overly broad.

### 2.    Declaratory Relief Will Inure to the Benefit of All Similarly Situated Policyholders Without Certification

The Sixth Circuit has denied certification under Rule 23(b)(2) where the declaratory relief will inure to the benefit of proposed class members regardless of certification.  *Craft v. Memphis Light, Gas & Water Div.*, 534 F.2d 684, 686 (6th Cir. 1976) (denying certification to putative class of homeowners whose utilities were shut off without due

-15-

process where declaration of unconstitutionality of utility companies' termination policies would inure to benefit of all proposed class members without certification); *see Galvin v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973) (denying Rule 23(b)(2) certification where state bound by court's declaration that its policies regarding unemployment compensation were unconstitutional; thus, certification unnecessary); *Drumright v. Padzieski*, 436 F. Supp. 310, 325 (E.D. Mich. 1977) (denying class certification for declaratory relief under Rule 23(b)(2) where declaration that certain state regulations were unconstitutional would inure to the benefit of all individuals deprived of due process when their unemployment benefits were denied without a hearing).

More recently, the Sixth Circuit faced the issue of whether class certification was appropriate under Rule 23(b)(3) for a proposed class of self-insured employee health and welfare plans where the district court found that defendant-insurer wrongfully imposed certain fees in violation of Michigan insurance laws.  The court explained that the declaration that defendant's conduct violated Michigan law did not justify class certification as individual issues predominated and the court's declarations about the legality of the charges would inure to the benefit of all similar self-insured employee health and welfare plans without certification.  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631-32 (6th Cir. 2011).  The Sixth Circuit explained that the better course of action would have been to enter final judgment in the individual action to allow the insurer to file an appeal, where the resolution of such appeal would allow other potential class members to decide whether to prosecute individual suits.  *Id.* at 632.  The same analysis applies with equal force here.

-16-

**3.     Policies Justifying Maintenance of Class Actions Would Not Be Advanced by Certification**

Certifying a class here does not advance the policies justifying deviation from the general rule that suits are brought in an individual's capacity. *Califano*, 442 U.S. at 700-01. One of the primary purposes of class action litigation is to allow a suit to be maintained on behalf of a group of individuals who are similarly situated where their individual claims would be too small to justify the commencement of a legal action. As the Supreme Court recently explained, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amgen,* 133 S. Ct. at 1202 (citations omitted). The policy of creating an incentive to prosecute claims too small to justify the bringing of a lawsuit would not be vindicated here. The Monteleones seek damages in excess of $100,000 and the named plaintiffs in the companion case seek damages in the amount of $40,000 and $70,000 respectively. Indeed, by plaintiffs' own admissions, the damages at stake as to the individual policyholders sought to be joined as class members here, number in the tens of thousands of dollars. (Doc. 90 at 7 n.5). Thus, this is not the typical putative class action where there is an insufficient incentive to prosecute individual claims.

Another policy reason for allowing class actions to proceed is that the possibility of greater attorney fees in a class suit may provide a "greater incentive to attorneys to undertake what otherwise may be unpopular litigation." 7 AA Fed. Prac. & Proc. Civ. § 1785.2 (3d Ed. 2015). There is nothing unpopular about the prosecution of an insurance coverage dispute which would justify certification here.

Looking to another of the policy reasons behind the maintenance of class actions, that is allowing claims to be streamlined and addressed in an expeditious and cost-effective manner both for the litigants and the courts, that goal also would not be fulfilled by certifying the class sought in this case. The court has already granted plaintiffs' motion for summary judgment, and defendants have not only agreed to be bound by the court's ruling, which unless reversed on appeal would have collateral estoppel preclusive effect, but have stipulated that they will not appeal the court's ruling. Having already denied plaintiffs' motions for class certification on their money damages claims under 23(b)(3), and having already granted plaintiffs' motion for summary judgment and issued its interpretation of the disputed clauses of plaintiffs' homeowners' policies, certifying a declaratory judgment class would serve no legitimate purpose.

### 4.    Putative Class Members Not Entitled to Notice

Plaintiffs' sole remaining reason in seeking class relief is to send notice to putative class members to advise them that the court's interpretation of certain policy provisions might possibly entitle them to benefits they were denied, or to greater benefits than they have already received, after submitting insurance claims for water damage. A class certified under Rule 23(b)(2) allowing for declaratory or injunctive relief, however, is not automatically entitled to notice like a Rule 23(b)(3) class allowing for money damages would be, one reason being that a Rule 23(b)(2) class is mandatory and there is no opt-out provision. *Wal-Mart Stores*, 131 S. Ct. at 2559. Rather, the decision to grant notice in a Rule 23(b)(2) class is a matter within the district court's sound discretion to be granted only in appropriate cases. Fed. R. Civ. P. 23(c)(2)(A). In determining whether notice would be appropriate, the district court must resolve "the conflict between the policy of facilitating

-18-

. . . class actions and the need to protect the rights of absent class members." *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 604 (E.D. Mich. 1996) (Rosen, J.) (internal quotation marks and citations omitted). Having already found that policy reasons justifying a departure from the general rule that suits are to be brought in an individual capacity are lacking here, and that potential class members already have a sufficient incentive to file individual claims based on the amount at stake, notice in this case is not warranted.

The hallmark of the Rule 23(b)(2) class is "the homogeneity of the interests of the members of the class" which is why certification is mandatory and notice is not required. *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 649 (6th Cir. 2006). The "homogeneity" of the proposed class is not evident in this case as the court's policy interpretation here does not necessarily establish liability in any particular case, but may merely offer some limited assistance in deciding the coverage issues unique to every policyholder's claim. As this court explained in its prior order denying certification of a 23(b)(3) class, "a declaratory judgment by this court would not answer the question of whether particular plaintiffs were entitled to relief for their water damage losses." (Doc. 61 at 11). Adjudication of a policyholder's claims for water damage depends on a fact-intensive inquiry as the court noted in its opinion denying the 23(b)(3) class:

> a class member may only recover by proving that she had a claim for water damage that was improperly denied which would require a fact-intensive inquiry. That determination would require analysis of the type of water damage, the cause of the water damage, and whether coverage for the water damage was subject to an exclusion in the policy depending on the origination of the water. Although in some cases the water's entry point may be evident from the claim file, in other cases . . . the source may be unclear or in dispute. The court would need to consider evidence as to whether the water or waste entered the home from a floor drain, as opposed to a toilet, shower or appliance. Even if plaintiffs' interpretation of the policy is correct, each claim would likely require a separate investigation to determine if the

-19-

water originated from inside or outside the home and this would require consideration of such individual factors as whether a blockage prevented water from leaving the residence, how weather conditions affected the water damage, the municipal system's historical issues, the amount off water in the basement and how quickly it accumulated, whether neighboring homes suffered similar damage, and other related evidence. In sum, each property loss claim will require individual investigation to determine if coverage is owing.

(Doc. 61 at 8-9). In short, the declaratory relief granted in this case does not establish defendants' liability in favor of the Monteleones or any putative class member.

In this case, the only possible purpose for providing the notice sought is to advise certain policyholders, the exact number of whom remains unknown, that their insurance claims may not have been fully compensated. Because the court has already ruled that individual issues predominate and that a class action would not be the superior method for resolving plaintiffs' claim for money damages, the notice sought would merely advise policyholders that they might want to pursue claims in their individual capacities and might wish to use plaintiffs' counsel in this case to do so. Plaintiffs have not cited to cases standing for the proposition that a class can be certified for the sole purpose of providing notice to potential litigants that they might want to pursue individual claims.

In deciding whether to grant the notice requested, the court has considered the costs and benefits involved. Plaintiffs approximate that the class consists of approximately 10,500 members, which is all policyholders who submitted claims for water losses over the past several years, the exact number of years depending on the statute of limitations period in the jurisdiction where the policyholder resides. Defendants complain that the class is overly broad, and plaintiffs respond that the class is so largely defined solely because of defendants' record keeping which defendants admit categorizes claims only as ones for

-20-

water losses, and does not break down the claims filed by type or origin of loss which would allow them to determine those claimants who suffered water damage caused by a basement or floor drain. Whatever the size of the proposed class, it is unclear if the declaratory relief granted here will substantially advance the interests of the proposed class, not just because the class is so broadly defined, but also because the narrow policy interpretation made by this court does not establish liability as to the class as a whole, or even to the subclass of those policyholders whose claims were denied under ¶ 3.b and ¶ 13.c exclusions, and does not entitle any policyholder to damages as a matter of law. Given the limited value of the court's declaratory judgment, the expense of providing class notice cannot be justified.

Plaintiffs argue that certification is warranted under the Sixth Circuit's holding in *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 540 (6th Cir. 2012), where the court affirmed certification under Rule 23(b)(2) and rejected defendant's argument that the class was not administratively feasible because of the large number of insurance policies involved. *Young* fails to support certification here. Most significantly, in *Young*, the claims of individual class members ranged from $32.60 to $126, thus making it unlikely that potential class members would discover the tax overcharges in dispute. *Id.* at 545. In sharp contrast, as admitted by plaintiffs in this case, the claims at stake here number in the tens to thousands of dollars; thus, many claimants already have a sufficient incentive to contact an attorney to challenge the handling of their claims. Accordingly, the administrative procedures and fees involved in providing notice to approximately 10,500 policyholders are unwarranted.

-21-

The other cases plaintiffs rely upon are also distinguishable.  Perhaps the most analogous case plaintiffs identify is *Gooch v. Life Inv. Ins. Co. of America*, 672 F.3d 402 (6th Cir. 2012) where the court ruled certification for declaratory relief permissible under Rule 23(b)(2) because the court's interpretation of certain policy terms entitled all policyholders who filed claims to relief.  But *Gooch* fails to support plaintiffs' request for class certification here.  In that case, insured policyholders seeking class certification sued their health insurance carrier for reducing the amounts of benefits paid for their supplemental cancer-only policy.  *Id.* at 410.  The insurer had been paying costs listed on bills submitted by hospitals and care providers, but later changed this policy, and paid only the amounts actually accepted by the providers as full payment from the primary insurer and the insured. *Id.* at 409.  Policyholders sought Rule 23(b)(2) certification.  *Id.* at 427.  The Sixth Circuit, while denying class certification because the class overlapped with a class certified in state court, discussed whether Rule 23(b)(2) certification would be appropriate as to those class members whose claims were not accounted for in the state litigation.  *Id.*

The Sixth Circuit ruled Rule 23(b)(2) certification would be warranted where the declaratory judgment involved a uniform interpretation of a policy term that would govern each class member.  *Id.* at 428.  What is unique about *Gooch* is that the policyholders also sought to recover money damages to be certified under Rule 23(b)(3), and the declaratory relief granted was likely to significantly advance those claims.  Moreover, in *Gooch*, the court's interpretation of the disputed policy terms amounted to a finding of liability for all policyholders who submitted a claim.  By contrast, the court's interpretation here of the ¶¶

-22-

3.b and 13.c exclusions does not amount to a finding of liability for any putative class member, and the court has denied certification of claims for money damages.

Finally, plaintiffs' reliance on *Potter v. Blue Cross Blue Shield*, No. 10-cv-14981, 2011 WL 9378789, *9 (E.D. Mich. 2011) (Murphy, J.) in support of class certification is also misplaced as that case involved certification under both Rule 23(b)(2) and (b)(3) for a class of policyholders whose claims for medical expenses for autism were denied as experimental and class members sought money damages and injunctive relief requiring defendant to pay benefits.  Unlike *Potter*, no class wide claims for money damages are viable here, and the court's interpretation of certain policy provisions does not establish liability.

### 5.      Whether Declaratory Relief Resolves Coverage Issue for Putative Class Members

Plaintiffs also argue that this court's denial of certification of plaintiffs' claims for money damages "compels the need for this (b)(2) class" because coverage questions must be decided by the court prior to appraisal.  (Doc. 77 at 22).  Plaintiffs appear to be suggesting that the award of declaratory relief here is a final determination that coverage is due to class members who would then be entitled, under the terms of their homeowners' policies, to proceed directly to an appraisal.  This is not accurate.  The court's interpretation here of the ¶ 3.b and ¶ 13.c exclusions does not resolve the coverage question in every case involving water damage.  Plaintiffs are correct that questions about whether a loss is covered under a policy is a matter for the court to decide, whereas the appraisal process mandated by statute and set forth in the homeowners' policy, is a method for determining the amount of the loss only.  *Auto-Owners Ins. Co. v. Kwaiser*, 190 Mich. App. 482, 486

(1991).  But granting the declaratory relief sought does not automatically entitle every policyholder who experienced water damage caused by water entering through the basement or floor drain to a recovery.  A coverage question still exists as to what caused the overflow or back up - for example, the municipal sewer, or a cause related to the plumbing system within the home.  Contrary to plaintiffs' suggestion, the granting of declaratory relief here does not mean all policyholders experiencing certain water damages are entitled to proceed immediately to an appraisal.  Quite likely, coverage issues will exist which require a judicial determination, one likely informed by the court's granting of declaratory relief here, but that relief is not dispositive of the coverage issue.

In sum, as this court's declaration of the meaning of certain disputed provisions of the Monteleones' homeowners' policy will inure to the benefit of all similarly situated policyholders without certification, and because putative class members would not be entitled to notice even if the court certified the class sought, no useful purpose would be served by granting class relief and plaintiffs' motion for class certification shall be denied.

## IV. Conclusion

For the reasons set forth above, plaintiffs' motion for summary judgment on their claim for declaratory relief (Doc. 78) is GRANTED IN PART as follows, and the court holds as a matter of law that:

1.    the ¶ 3.b exclusion does not apply to basement/floor drain water claims caused by water originating from a plumbing system within the resident premises; and

-24-

2.      once plaintiffs prove that coverage exists under the terms of the policy, defendants bear the burden of proof that coverage is negated by an exclusion,

and is DENIED IN PART as to the other declaratory relief sought in the original motion and in the reply brief.

IT IS FURTHER ORDERED that plaintiffs' motion for class certification (Doc. 77) is DENIED.

**IT IS SO ORDERED**.

Dated:  July 2, 2015

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 2, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---